**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| QUANTUM TECHNOLOGY INNOVATIONS, LLC | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | C.A. No. 1-24-cv-01102 |
| | ) | |
| PANDORA MEDIA, LLC, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**PANDORA MEDIA, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS FOR**
**FAILURE TO CLAIM PATENTABLE SUBJECT MATTER UNDER 35 U.S.C. § 101**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................. 3

        A.      Procedural History ................................................................................. 3

        B.      The '376 Patent ...................................................................................... 4

III.    LEGAL STANDARDS ...................................................................................... 6

        A.      Motions to Dismiss Under Federal Rule 12(b)(6) ................................. 6

        B.      Patent Eligibility Under Section 101 ..................................................... 7

IV.     THE PATENT-IN-SUIT IS PATENT-INELIGIBLE UNDER THE TWO-STEP
        *ALICE* ANALYSIS............................................................................................. 9

        A.      *Alice* Step One: The '376 Patent Is Directed To The Abstract Idea Of
                Providing Compensation In Return For Providing A Service ................ 9

                1.      The '376 Patent Merely Automates A Traditional Business
                        Practice Rather Than Disclosing An Improvement On A Computer ....... 10

                2.      Federal Courts Consistently Hold Ideas That Do Not Improve How
                        A Computer Operates To Be Abstract ....................................... 13

        B.      *Alice* Step Two: The '376 Patent Does Not Contain An Inventive Concept
                Regardless Of Whether The Claim Elements Are Considered Individually
                Or As An Ordered Combination ............................................................ 17

        C.      Plaintiff's Contention That The '376 Patent Would Not Preempt The Field
                Misses The Mark And Does Not Avoid Patent Eligibility ................... 22

        D.      Claim 37 Is Representative Of All Claims In The '376 Patent............. 23

V.      CONCLUSION.................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014)............................................................................................. *passim*

*Ancora Techs., Inc. v. HTC Am., Inc.*,
908 F.3d 1343 (Fed. Cir. 2018)..........................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................6

*Ass'n for Molecular Pathology v. Myriad Genetics*,
569 U.S. 576 (2013)..........................................................................................................7

*AuthWallet, LLC v. Block, Inc.*,
602 F. Supp. 3d 620 (S.D.N.Y. 2022), *aff'd*, 2023 WL 3330298 (Fed. Cir.
May 10, 2023).................................................................................................... *passim*

*Berkheimer v. HP*,
881 F.3d 1360 (Fed. Cir. 2018).........................................................................................8

*Bluebonnet Internet Media Servs., v. Pandora Media, LLC*,
2024 WL 1338940 (Fed. Cir. Mar. 29, 2024)............................................................6, 15, 18

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)....................................................................................1, 17

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014)..................................................................................2, 14, 19

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
Nat'l Ass'n, 776 F.3d 1343, 1348-49 (Fed. Cir. 2014).......................................................2, 23

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011).........................................................................................16

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012).........................................................................................21

*DigiMedia Tech, LLC v. ViacomCBS Inc.*,
592 F. Supp. 3d 291 (S.D.N.Y. 2022)...................................................................................8

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016).........................................................................................19

*Gabara v. Facebook, Inc.*,
   No. 19-cv-9890 (DLC), 484 F. Supp. 3d 118 (S.D.N.Y. 2020), *aff'd*, 852 F.
   App'x 541 (Fed. Cir. 2021) ...........................................................................8, 10, 15

*Genetic Techs. Ltd. v. Merial*,
   818 F.3d 1369 (Fed. Cir. 2016)..................................................................................8

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015)................................................................................17

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
   850 F.3d 1315 (Fed. Cir. 2017)................................................................................19

*Internet Patents v. Active Network*,
   790 F.3d 1343 (Fed. Cir. 2015)..................................................................................7

*Kickstarter, Inc. v. Fan Funded, LLC*,
   2015 WL 3947178 (S.D.N.Y. June 29, 2015), *aff'd*, 654 F. App'x 481 (Fed.
   Cir. 2016) .................................................................................................................13

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
   No. 13-cv-3599 (DLC), 984 F. Supp. 2d 189 (S.D.N.Y. 2013)..................................9

*Mayo Collaborative Servs. v. Prometheus Labs.*,
   566 U.S. 66 (2012).....................................................................................................7

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
   811 F.3d 1314 (Fed. Cir. 2016)...........................................................................20, 21

*Obodai v. YouTube LLC*,
   No. 11 Civ. 4343(DLC), 840 F. Supp. 2d 714 (S.D.N.Y. 2011) ................................6

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 .........................................................................................................14

*Perry St. Software, Inc. v. Jedi Techs., Inc.*,
   548 F. Supp. 3d 418 (S.D.N.Y. 2021)........................................................................8

*Pers. Beasties Grp. LLC v. Nike, Inc.*,
   341 F. Supp. 3d 382 (S.D.N.Y. 2018), *aff'd*, 792 F. App'x 949 (Fed. Cir.
   2020) ....................................................................................................................2, 24

*Quantum Tech. Innovations, LLC v. The Criterion Collection Inc.*,
   No. 1:22-cv-00582, Dkt. 10 (D. Del. Oct. 13, 2022) .................................................3

*Quantum Tech. Innovations, LLC. v. Passionflix Inc.*,
   No. 1:22-cv-00583, Dkt. 10 (D. Del. Oct. 13, 2022) .................................................3

*Quantum Tech. Innovations, LLC v. Popcornflix.com, LLC*,
  No. 1:22-cv-00666, Dkt. 22 (D. Del. Apr. 19, 2023) ................................................. 3

*RDPA, LLC v. Geopath, Inc.*,
  543 F. Supp. 3d 4 (S.D.N.Y. 2021) ......................................................... 6, 10, 17, 19

*Realtime Tracker, Inc. v. RELX, Inc.*,
  659 F. Supp. 3d 384 (S.D.N.Y. 2023) .......................................................... 2, 14, 23

*Return Mail, Inc. v. U.S. Postal Serv.*,
  868 F.3d 1350 (Fed. Cir. 2017), *rev'd and remanded on other grounds*, 587
  U.S. 618 (2019) ...................................................................................................... 22

*SAP Am. v. InvestPic*,
  898 F.3d 1161 (Fed. Cir. 2018) ........................................................................... 7, 8

*Synopsys v. Mentor Graphics*,
  839 F.3d 1138 (Fed. Cir. 2015) ............................................................................... 7

*In re TLI Commc'ns LLC Pat. Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ......................................................................... 20, 21

*Trading Techs. Int'l, Inc. v. IBG LLC*,
  921 F.3d 1378 (Fed. Cir. 2019) ............................................................................. 10

*Verint Sys. Inc. v. Red Box Recorders Ltd.*,
  226 F. Supp. 3d 190 (S.D.N.Y. 2016) ................................................................... 14

*Visual Memory LLC v. NVIDIA Corp.*,
  867 F.3d 1253 (Fed. Cir. 2017) ............................................................................. 10

*W. Express Bancshares, LLC v. Green Dot Corp.*,
  No. 19-cv-4465 (DLC), 2019 WL 4857330 (S.D.N.Y. Oct. 2, 2019), *aff'd*,
  816 F. App'x 485 (Fed. Cir. 2020) .......................................................................... 8

*WalkMe Ltd. v. Pendo.io, Inc.*,
  No. 18-cv-7654 (DLC), 2019 WL 1512602 (S.D.N.Y. Apr. 4, 2019) ..................... 8

*WhitServe LLC v. Donuts Inc.*,
  809 F. App'x 929 (Fed. Cir. 2020) ........................................................................ 13

## Statutes

35 U.S.C. § 101 ...................................................................................... *passim*

## Other Authorities

Federal Rule of Civil Procedure 8(a)(2) .................................................................. 6

Federal Rule of Civil Procedure 12(b)(6) ............................................................................3, 6, 8, 9

U.S. Patent No. 7,650,376 .................................................................................................... *passim*

U.S. Patent No. 8,265,089 .............................................................................................................3

U.S. Patent No. 9,118,712 .............................................................................................................3

## I.   <u>INTRODUCTION</u>

Plaintiff Quantum Technology Innovations, LLC ("QTI") is a patent assertion entity that is "in the business of licensing patented technology" rather than making products or offering services of its own. Ex. A, ¶ 2.[1]  Since its incorporation in June 2021, QTI's "business" has been asserting U.S. Patent No. 7,650,376 (the "'376 Patent") in litigation, but QTI's '376 Patent is a textbook patent-ineligible submarine patent.

The '376 Patent was prosecuted pre-*Alice*, and lurked under the surface for nearly thirteen years.  It professes to "facilitate[] the distribution of content over a network," where the claims recite a routine practice that has been around as long as people have done business—that is, "offer[ing] an incentive as compensation" for providing something (in this case, "content"), to a client.  This fundamental business practice is not new, but instead has been "long prevalent in our system of commerce." *BSG Tech LLC v. Buyseasons, Inc*., 899 F.3d 1281, 1285–86 (Fed. Cir. 2018).  Federal courts routinely hold such traditional business practices to be abstract ideas without an inventive concept, which fail the two part test for patent eligibility. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  The Court here should find the same.

The sole asserted claim, claim 37, does not disclose, describe, or claim any new hardware, software, or improved computer or networking technology for "effecting the provision of content over a network." '376 Patent, claim 37.  Instead, claim 37 only recites generic, routine, and commonplace components in regular everyday use with respect to computer and network technology—"computer programs," "network," "server," and "transmission"—to implement the traditional business practice of offering incentives as compensation for performance of a service. This renders claim 37 a patent ineligible abstract idea as a matter of law. *Alice*, 573 U.S. at 216.

---

[1] Cites to "Ex._" are to exhibits to the Declaration of M. Baghdassarian, dated July 1, 2024.

Claim 37 also fails to provide an inventive concept sufficient to save the claim from a finding of ineligibility, whether the claim elements are read individually or as an ordered combination for purposes of Step 2 of the analysis.  Once the technical jargon is removed, claim 37 simply requires sending and receiving information (*i.e.*, "content") between devices using generic computer components behaving exactly as expected according to their common, everyday use in exchange for payment for such content.  This well known business practice using routine computer components is not patent eligible. *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

While Claim 37 is the sole asserted claim, other claims are not materially different for purposes of the instant motion as all independent claims require the same limitation that the owner of the node server is "offered an incentive as compensation." *See* '376 Patent, claims 1, 35–37, 55–57, 90.[2]  And none of the dependent claims "differ in any manner that is material to the patent-eligibility inquiry." *Realtime*, 659 F. Supp. 3d at 395.  Thus, the Court may treat claim 37 as representative of all claims of the '376 Patent. *See Content Extraction & Transmission LLC v. Wells Fargo Bank*, Nat'l Ass'n, 776 F.3d 1343, 1348–49 (Fed. Cir. 2014); *Pers. Beasties Grp. LLC v. Nike, Inc*., 341 F. Supp. 3d 382, 386 (S.D.N.Y. 2018), *aff'd*, 792 F. App'x 949 (Fed. Cir. 2020).

Because the '376 Patent claims patent ineligible subject matter under 35 U.S.C. § 101, Pandora respectfully requests that the Court dismiss QTI's case with prejudice.

---

[2] The only difference between the other independent claims and asserted claim 37 is the form in which they were drafted, but that does not affect the subject matter analysis under *Alice. See, e.g.*, *Realtime Tracker, Inc. v. RELX, Inc.,* 659 F. Supp. 3d 384, 408 (S.D.N.Y. 2023).

## II.   STATEMENT OF FACTS

### A.   Procedural History

Plaintiff QTI is a patent assertion entity and the listed assignee of the '376 Patent. Ex. A, ¶¶ 11–13.  QTI was incorporated in June 2021 and purportedly acquired the '376 Patent from High Bandwidth, LLC in that same month. *See* Ex. B, Patent Assignment Record for U.S. Patent 7,650,376.[3]   The instant lawsuit is merely one of several QTI has recently filed alleging infringement of the '376 Patent.  In most of these actions, QTI voluntarily dismissed the case shortly after filing. *See Quantum Tech. Innovations, LLC v. Popcornflix.com, LLC*, No. 1:22-cv-00666, Dkt. 22 (D. Del. Apr. 19, 2023); *Quantum Tech. Innovations, LLC v. The Criterion Collection Inc.*, No. 1:22-cv-00582, Dkt. 10 (D. Del. Oct. 13, 2022); *Quantum Tech. Innovations, LLC. v. Passionflix Inc.*, No. 1:22-cv-00583, Dkt. 10 (D. Del. Oct. 13, 2022).

QTI filed its complaint against Pandora Media, LLC ("Pandora") on February 15, 2024. Ex. A.  QTI alleges that Pandora infringes claim 37 of U.S. Patent No. 7,650,376 (the "'376 Patent") through Pandora's application ("app") that "includes instructions for effecting the provision of content (*e.g.*, music, comedy, podcasts, etc.) over a network (*e.g.*, the internet)." Ex. A, ¶¶ 26–27.  Pandora moves to dismiss QTI's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) because the '376 Patent claims patent-ineligible subject matter under 35 U.S.C. § 101 and does not contain any inventive concept; namely, it claims the abstract idea of incentivizing performance of a service (*i.e.*, the "transmission of … specified content"). '376 Patent, claim 37.

---

[3] Although QTI claims to be the "assignee of all right, title and interest" in the '376 Patent, the '376 patent's assignment cover sheet references two different patents (U.S. Patent Nos. 8,265,089 and 9,118,712) and two different entities as assignor and assignee ("Everis Inc." and "Touchpoint Projection Innovations, LLC"). *See* Ex. B. Although not clear at this time that QTI is the actual owner of the '376 Patent, Pandora assumes for the purposes of this motion that QTI is the proper "assignee of all right, title and interest" in the '376 Patent. Pandora reserves the right to argue that QTI is not the proper assignee of the '376 Patent should discovery reveal this.

Consistent with its "business" model, QTI also filed a related lawsuit on April 16, 2024 against Pandora's parent, Sirius XM Holdings, Inc., in the Eastern District of Texas. *See* No. 2-24:cv-00246 (E.D. Tex.).  In that case, QTI also asserted claim 37 of the '376 Patent.

### B.   The '376 Patent

The '376 Patent is titled, "Content distribution system for distributing content over a network, with particular applicability to distributing high-bandwidth content."  The '376 Patent issued from application No. 09/717,184, as a continuation-in-part from provisional application No. 60/192,165, filed March 27, 2000.

The '376 Patent claims are directed to the "provision of content over a network by a content provider" and "enlisting one or more network sites to facilitate the distribution of content," where the enlisted network sites are "offered an incentive as compensation" for distribution of the content. '376 Patent, 1:20–26, claims 1, 35–37, 55–57, 90.  The patent expires in August 2024.

The '376 Patent specification describes well known network systems for delivering content over the Internet. *Id.*, 1:40–56 ("[S]everal servers on which copies of the content are stored have been connected worldwide at different nodes on the Internet to effect distribution of the content."). The specification describes the purported invention as "the distribution of content … by a content provider over a network" that is "facilitated by making use of network site(s) throughout the network to dispense some part or all of the content on behalf of the content provider." *Id.*, 2:8–24. The purported invention requires that network sites be recruited to dispense content through the offering of incentives:

> In one particularly advantageous aspect of the invention, **the owner of a site on the network can be provided with one or more incentives to make that network site a node server**. Such incentives can include, for example, access to premium content from the core server (or other content providing site), access to free content from a content providing site (e.g., a free movie, free software, a free software upgrade), access to content that has been modified in a desirable way (e.g., content without advertising), loyalty program credits (e.g., frequent flyer miles), cash, or

some combination of such incentives…. **[T]he invention contemplates the use of any incentive or combination of incentives to induce a network site owner to allow their site to be used as a node server**.

*Id*. at 4:34–47 (emphasis added); *see also id*. at 2:25–34.

All components described in the '376 Patent specification are well known, common, generic computer and network systems.  For example, the specification confirms that the computer and network components of the claims, including the methods of using them, were "well known" to those skilled in the art and are described as "conventional." *See* '376 Patent, 8:36–43; *see also id.* at 3:45–49, 7:28–32, 7:46–51, 8:1–5, 18:1–3, 18:66–19:5.  The '376 Patent expressly states that, "when the invention is implemented on the Internet, conventional software and hardware, as is well known, can be used to transmit" the content. *Id.* at 8:36–38; *see also id.* at 3:29–34 (describing "conventional usage" of terms "network site" and "node"); *id.* at 4:67–5:4 (describing facilitation of content over "conventional television networks, cable television networks, digital television networks, satellite television networks"); *id.* at 11:47–52 (describing implementation of the claimed invention on the Internet using a "conventional Web browser"); *id.* at 11:61–66 (same); *id.* at 14:1–4 (use of a "conventional Web browser" to accomplish claimed functions).

Of the 123 claims in the '376 Patent, QTI only asserted independent claim 37. Ex. A, ¶ 31 and Ex. 2 thereto (QTI's claim chart).  Claim 37 is reproduced below:

> 37. A computer readable storage medium or media encoded with one or more computer programs including instructions for effecting the provision of content over a network, comprising:
>     [a] instructions for receiving a request from a client for specified content;
>     [b] instructions for communicating to the client the identity of a node server having the specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server; and
>     [c] instructions for ascertaining that the node server transmitted the specified content to the client, **wherein an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client**.

'376 Patent, 27:62–28:9 (emphasis added).

5

Claim 37 also recites only generic and ubiquitous instructions for receiving and communicating a client request for content using commonplace computing and networking tools, and concludes with a "wherein" clause (bolded above) that repeats the purported innovation *ipsis verbis*, offering an incentive for transmission of the specified content to a client. The other independent claims in the '376 Patent (*i.e.*, claims 36, 37, 55–57, and 90) are functionally identical to claim 37 because they all require the same limitation that the owner of the node server is "offered an incentive as compensation." *See* '376 Patent, claims 1, 35–37, 55–57, 90.  As such, the dependent claims do not materially differ from the independent claims.

## III.   LEGAL STANDARDS

### A.   Motions to Dismiss Under Federal Rule 12(b)(6)

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Obodai v. YouTube LLC*, No. 11 Civ. 4343(DLC), 840 F. Supp. 2d 714, 716 (S.D.N.Y. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Applying this plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Although the Court "must accept all the factual allegations of a complaint as true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *RDPA, LLC v. Geopath, Inc.*, 543 F. Supp. 3d 4, 16 (S.D.N.Y. 2021) (citing *Iqbal*, 556 U.S. at 678).  Indeed, in the context of motions to dismiss under 35 U.S.C. § 101, the Federal Circuit has been clear that "conclusory allegations" in a pleading cannot avoid a finding of patent ineligibility on a motion to dismiss. *Bluebonnet Internet Media Servs., v. Pandora Media, LLC*, 2024 WL 1338940, at *2 (Fed. Cir. Mar. 29, 2024)

(explaining that the district court need not "accept as true allegations in the complaint that are conclusory, state legal conclusions, or contradict the patent itself").

**B.**     **Patent Eligibility Under Section 101**

35 U.S.C. § 101 prescribes that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor . . . ."  In *Alice v. CLS Bank*, the Supreme Court explained that Section 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics*, 569 U.S. 576, 589 (2013)). These "basic tools of scientific and technological work" are subject matter that is "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 71 (2012). Even if patent claims directed to laws of nature, natural phenomena, or abstract ideas meet all the other requirements for patentability, and are "new" and "inventive," they are still ineligible for patenting. *SAP Am. v. InvestPic*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (citing *Synopsys v. Mentor Graphics*, 839 F.3d 1138, 1151 (Fed. Cir. 2015) ("[A] claim for a *new* abstract idea is still an abstract idea.").

The Supreme Court outlined a two-part test to distinguish patents that "claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217.  For Step One, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents v. Active Network*, 790 F.3d 1343, 1346-48 (Fed. Cir. 2015).  If the claims pass Step One, courts then proceed to Step Two to "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78-79)). Step Two is a "search for an 'inventive concept'—*i.e.*, an element or combination of elements

7

that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217-18.

This analysis "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion…." *SAP*, 898 F.3d at 1166.  The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) (citing cases); *see also Berkheimer v. HP*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) (explaining that patent eligibility can be resolved on a motion to dismiss).

Consistent with the Federal Circuit's guidance, this Court routinely grants 12(b)(6) motions to dismiss on the pleadings where, as here, the patent asserted is invalid under § 101 as evaluated under *Alice*. *See, e.g.*, *Gabara v. Facebook, Inc.*, No. 19-cv-9890 (DLC), 484 F. Supp. 3d 118, 130 (S.D.N.Y. 2020), *aff'd*, 852 F. App'x 541 (Fed. Cir. 2021) (granting motion to dismiss where asserted claims claimed an invention "akin to moving a sliding window across an image" which was an abstract idea); *W. Express Bancshares, LLC v. Green Dot Corp.*, No. 19-cv-4465 (DLC), 2019 WL 4857330, at *7 (S.D.N.Y. Oct. 2, 2019), *aff'd*, 816 F. App'x 485 (Fed. Cir. 2020) (granting motion to dismiss where asserted claims to a "method of funds transfer" were abstract under the *Alice* test); *WalkMe Ltd. v. Pendo.io, Inc.*, No. 18-cv-7654 (DLC), 2019 WL 1512602, at *8 (S.D.N.Y. Apr. 4, 2019) (granting motion to dismiss under section 101 where asserted claim was directed to "any method of using a computer to 'automatically generate' the dynamic linking of instructions with website features"); *DigiMedia Tech, LLC v. ViacomCBS Inc.*, 592 F. Supp. 3d 291, 304 (S.D.N.Y. 2022) (granting motion to dismiss because asserted claims were directed to providing preview summaries of video or audio programming over a network and were ineligible under section 101); *Perry St. Software, Inc. v. Jedi Techs., Inc.*, 548 F. Supp. 3d 418, 436–37

(S.D.N.Y. 2021) (granting judgment on the pleadings under a standard that is "identical to that [for granting] a Rule 12(b)(6) motion for failure to state a claim" where asserted claims were directed to the abstract idea of automated matchmaking and were ineligible for patent protection under § 101); *Lumen View Tech. LLC v. Findthebest.com, Inc.*, No. 13-cv-3599 (DLC), 984 F. Supp. 2d 189, 205 (S.D.N.Y. 2013) (finding claims directed to the abstract concept of computerized matchmaking in a business or enterprise context invalid under section 101, and granting motion to dismiss on that basis).

## IV. THE PATENT-IN-SUIT IS PATENT-INELIGIBLE UNDER THE TWO-STEP *ALICE* ANALYSIS

The '376 Patent is invalid under § 101 as a matter of law because the purported invention is directed to an abstract idea, specifically, the traditional business practice of offering incentives as compensation for providing a service that has long been prevalent in our system of commerce. The claims, when considered element-by-element and as an ordered combination, fail to provide the requisite "inventive concept" that transforms the abstract idea into a patent-eligible one because they do not recite any specific improvement in computers or network technology. Instead, the claims recite only generic computing and networking technologies operating exactly as one would expect according to their everyday usage to automate a traditional business practice. Accordingly, the claims are not patent-eligible, and Pandora respectfully requests that QTI's case be dismissed with prejudice.

### A. *Alice* Step One: The '376 Patent Is Directed To The Abstract Idea Of Providing Compensation In Return For Providing A Service

The '376 Patent claims are directed to computer-implemented versions of a longstanding economic practice: providing incentives as compensation in exchange for transmitting a client-requested service (*i.e.*, the provision of specified content). Claim 37, when stripped of its technical jargon, merely requires that (i) a client request transmission of specified content from a server,

and, (ii) in return for transmitting the requested content, that the owner of the server is offered "an incentive as compensation" for the transmission. '376 Patent, claim 37.  But the "use of a computer to perform well known business practices [is] not patentable." *RDPA, LLC v. Geopath, Inc.*, 543 F. Supp. 3d 4, 20 (S.D.N.Y. 2021).  And the use of a computer to perform the well-known business practice of providing incentives in return for providing a service is all that claim 37 covers.  Thus, claim 37 is directed to an abstract idea at Step One of the *Alice* framework.

1.  **The '376 Patent Merely Automates A Traditional Business Practice Rather Than Disclosing An Improvement On A Computer**

"Where the patent involves computer software, *Alice* step one requires a court to 'articulate with specificity what the claims are directed to, and ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.'" *Gabara v. Facebook, Inc.*, 484 F. Supp. 3d 118, 124 (S.D.N.Y. 2020) (quoting *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1258 (Fed. Cir. 2017)).  The "mere automation of manual process using generic computers ... does not constitute a patentable improvement in computer technology." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019).  An asserted improvement in computer functionality must have "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1349 (Fed. Cir. 2018).

Here, the '376 Patent involves the use of generic and commonplace computers and networking technologies to automate a foundational business practice, not to improve computer technology.  In this way, the generic components recited in the claims behave exactly as one would expect them to within computer and network systems.  There is nothing in the claim language specifically identifying any purported improvement in computer functionality, and QTI does not allege any in its complaint. *See* Ex. A, ¶¶ 19–25.  Indeed, claim 37 does not recite any computer

or network components in greater specificity than the generic terms "computer readable storage medium," "network," "node server," "content," and "client." '376 Patent, 27:62–28:9.

The specification further confirms that the components in the claims are nothing more than routine, generic and commonplace computer and networking components that were already well known in the field at the time the '376 Patent issued.  For example, the "Background of the Invention" recites well known network systems for delivering content over the Internet using a "multiplicity of servers at key places (nodes)." '376 Patent at 1:40–56 ("[S]everal servers on which copies of the content are stored have been connected worldwide at different nodes on the Internet to effect distribution of the content.").  The '376 Patent describes that the distribution of content is "facilitated by making use of network site(s) throughout the network to dispense some part or all of the content on behalf of the content provider." *Id.* at 2:8–24.  Notably, the '376 Patent does not recite, disclose, describe, or identify new content, or improved content.  Instead, the '376 Patent describes using existing and commonly used computer hardware, software, and networks to distribute pre-existing content. *Id.* at 3:29–31 (noting "conventional" use of "network site" and "node"); 4:67–5:4 (noting implementation of claimed invention on "conventional television networks" etc.); 8:36–43 (noting that when the claimed invention is implemented on the Internet, it can be done with use of "conventional software and hardware"); 11:47–52 (noting use of "conventional Web browser" to implement claimed invention).

There is also no indication, either in the '376 Patent or in QTI's complaint, that the computer and network components behave in any way other than how one would expect them to behave according to their common, everyday usage. *See generally* Ex. A; '376 Patent.  Indeed, the '376 Patent specification confirms that the "core servers," "node servers," "network," and "client" describe various components "conventionally associated in the computer science arts." '376

Patent, 3:45–49.  The '376 Patent fails to claim, much less identify, any functional improvement for computers or networks beyond what is already well known, routine, and understood.

Moreover, the '376 Patent is replete with citations to computer and network components that were already "known by those skilled in the art" by the time the '376 Patent issued.  For example, the '376 Patent contemplates that the use of network and computer components "can be implemented using any technology appropriate for the type of network of which the core server, node servers and clients are part," and that these technologies are "known by those skilled in the art." *Id.* at 7:28–32; *see also id.* 7:46–51 ("When a system according to the invention is implemented on a computer network, a core server of the system can be embodied by one or more server computers (i.e., any computer or computers that operate in accordance with server software, as understood by those skilled in the art) that operate in accordance with core server software."); *id.* at 8:1–5 (television system components are "known by those skilled in the art"); *id.* at 15:48–52 (software for determining which content each node server stores can be used, and such methods are "understood by those skilled in the art"); *id.* at 18:1–3 (methods of identifying node servers is "known to those skilled in the art"); *id.* at 18:66–19:5 (measurements of bandwidth and latency performance can be accomplished "using techniques known to those skilled in the art").

Not only are the recited computer and network components generic, ubiquitous, and well known, so too are the "incentives" that the claims contemplate offering as compensation. *See id.* at 4:34–47.  The '376 Patent describes that "the invention contemplates the use of any incentive or combination of incentives to induce a network site owner to allow their site to be used as a node server." *Id.*  But each and every "incentive" the '376 Patent identifies—such as access to premium content, access to free content, free movie(s), free software, free software upgrades, loyalty program credits (*e.g.*, frequent flyer miles), cash, or other "combination of such incentives"—has

been in regular commercial use for decades, if not longer as the specification confirms. *Id.* at 4:34–47. In short, the '376 Patent is directed to the patent-ineligible abstract idea.

**2.      Federal Courts Consistently Hold Ideas That Do Not Improve How A Computer Operates To Be Abstract**

Federal courts, including courts in this District, have held that claims involving incentives and compensation in return for a client-requested service using generic computer components as found in the '376 Patent are directed to ineligible abstract ideas. *See, e.g.*, *Kickstarter, Inc. v. Fan Funded, LLC*, 2015 WL 3947178, at *11 (S.D.N.Y. June 29, 2015), *aff'd*, 654 F. App'x 481 (Fed. Cir. 2016) (finding the "concept of incentive-based funding is incontestably similar to other fundamental economic concepts, and to other types of organizing human activity, both of which have been found to be abstract ideas by the Supreme Court and the Federal Circuit") (internal citations omitted) (collecting cases); *AuthWallet, LLC v. Block, Inc*., 602 F. Supp. 3d 620, 631 (S.D.N.Y. 2022), *aff'd*, 2023 WL 3330298 (Fed. Cir. May 10, 2023) (finding patent "directed to the abstract idea and well-established business practice of processing payments during a sales transaction where a benefit, such as a discounted payment, is given to the purchaser for use in future transactions").

The '376 Patent's use of conventional computer components to automate the traditional business practice of providing incentives in return for a service further confirms that the claims are patent-ineligible under *Alice*.  The Supreme Court and the Federal Circuit have repeatedly held that the "use of standard computers and networks to carry out [fundamental economic practices]—more speedily, more efficiently, more reliably, does not make the claims any less directed to that abstract idea." *WhitServe LLC v. Donuts Inc*., 809 F. App'x 929, 933 (Fed. Cir. 2020) (collecting cases); *see also Verint Sys. Inc. v. Red Box Recorders Ltd*., 226 F. Supp. 3d 190, 194–95 (S.D.N.Y. 2016) (collecting cases).

13

The case *Realtime Tracker, Inc. v. RELX, Inc*. is instructive. *See* 659 F. Supp. 3d 384, 408 (S.D.N.Y. 2023).   In that case, this court held that patent claims directed to timekeeping for compensation were abstract because they constituted a "fundamental economic practice long prevalent in our system of commerce." *Id.* at 402.   Here, just like in *Realtime*, the '376 Patent claims an invention that automates the fundamental economic practice of providing incentives as compensation.   And just like in *Realtime*, the '376 Patent claims are "fairly equated to concepts that the Supreme Court, the Federal Circuit, and lower courts have found to reflect abstract ideas that lack protection under § 101." *Id.* (collecting cases).   To paraphrase the court in *Realtime*, "the modern professional services environment that gave rise to [QTI's] claimed invention differs in mechanics and optics from the historical settings in which humans have [offered incentives] for a commercial purpose," but "whether by quill or by computer, humans have undertaken such [activities] for client or customer benefit for centuries." *Id.*

The *Realtime* court further explained that the fact that the claims, as written, did not preempt every literal way of conducting the activity did not make them any less abstract. *Id.* at 403 (citing *OIP Techs., Inc. v. Amazon.com, Inc*., 788 F.3d 1359, 1362–63) (Fed. Cir. 2015)).   The same is true here because the claims, as drafted, recite practices that draw on business practices "long-familiar" in commercial transactions. *buySafe*, 765 F.3d at 1354–55 (Fed. Cir. 2014).   An abstract idea, embodied in the claims here, that does not "preempt all [methods] in the e-commerce setting [does] not make them any less abstract." *OIP Techs.*, 788 F.3d at 1362–63.

To try to stave off a patent ineligibility finding, QTI alleges that the claims are "not directed to an abstract idea or law of nature," and instead, are "directed to a computer readable storage medium, which is a tangible object and therefore neither an abstract idea or law of nature." Ex. A, ¶¶ 22–23.   QTI's allegations, however, are insufficient to save the claims.   As an initial matter,

QTI's conclusory allegations at ¶¶ 22–23 fail as a matter of law because this Court need not "accept as true allegations in the complaint that are conclusory, state legal conclusions, or contradict the patent itself." *Bluebonnet Internet Media Services v. Pandora Media*, 2024 WL 1338940, at *2 (Fed. Cir. Mar. 29, 2024).  Indeed, QTI provides no explanation as to why a tangible medium would transform an abstract idea into a patentable one.  Thus, the Court can, and should, find that the '376 Patent (including asserted claim 37) directed to an unpatentable abstract idea.

QTI's other conclusory allegations state a legal conclusion, albeit an incorrect one, *i.e.*, that the claims are "directed to a computer readable storage medium." Ex. A, ¶¶  22–23.  On the contrary, the asserted claim is directed to an abstract idea (*i.e.*, offering compensation in return for providing a service), not to any tangible object and certainly not to a compute readable storage medium.  At Step One, "the focus of the inquiry is 'the claimed advance over the prior art.'" *AuthWallet, LLC v. Block, Inc.*, 602 F. Supp. 3d 620, 630 (S.D.N.Y. 2022), *aff'd sub nom. In re AuthWallet, LLC*, No. 2022-1842, 2023 WL 3330298 (Fed. Cir. May 10, 2023).  In cases like this one, where the asserted patent involves computer technology, the inquiry requires the Court to "ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *Gabara v. Facebook, Inc.*, No. 19-cv-9890 (DLC), 484 F. Supp. 3d 118, 124 (S.D.N.Y. 2020), *aff'd*, 852 F. App'x 541 (Fed. Cir. 2021).

Following that instruction, claim 37 is not directed to any improvement in computer functionality or new computer hardware.  Instead, it is directed to the long-standing business practice of providing incentives as compensation for delivery of a service using a standardized computer components. *AuthWallet*, 602 F. Supp. 3d at 635.  If claim 37 actually claimed improved instructions for computer functionality, QTI would have pointed it out in its complaint, and claim 37 would expressly disclose such improved instructions. *See* Ex. A, ¶¶ 22–23.  But that claim

language is not present, which is the "focus" of the inquiry under *Alice* at Step One. *AuthWallet*, 602 F. Supp. 3d at 630.

Even if QTI were correct that claim 37 is directed to a "tangible object," simply including the words "computer readable storage medium" in the claim does not render it *per se* patent-eligible. *See, e.g.*, *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011). The Federal Circuit has explained that, "the basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers, or by claiming the process embodied in program instructions on a computer readable medium." *Id.* For example, in *CyberSource*, the claims at issue recited a "computer readable medium containing program instructions for detecting fraud in a credit card transaction between a consumer and a merchant over the Internet." *Id.* at 1369. The Federal Circuit explained that the claims were drawn to patent-ineligible abstract ideas and not to a "particular machine" because the process embodied in the claimed invention "would not be necessary or possible without the Internet." *Id.* at 1370. So too here. The '376 Patent is not drawn to a "tangible object," as QTI alleges, but rather to an abstract idea implemented using the Internet. Like in *CyberSource*, the claimed invention's process of sending and receiving content over a network using a "computer readable storage medium" would not be "possible without the Internet." *Id.* at 1370–71.

QTI also alleges that the "instructions contained on that computer storage medium relate to an improved method for content distribution," but neither QTI's complaint nor the '376 Patent describe where asserted claim 37 actually claims such an improvement. *See* Ex. A, ¶ 23; '376 Patent, 27:62–28:9. On the contrary, claim 37 does not expressly claim any "improved method for content distribution" or improved "instructions." Claim 37 is merely a "simple instruction to

apply an abstract idea on a computer." *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015). That is not enough.

Because claim 37 does not claim any improvement in computer functionality, it is directed to an abstract idea and fails *Alice* Step One.

### B. *Alice* Step Two: The '376 Patent Does Not Contain An Inventive Concept Regardless Of Whether The Claim Elements Are Considered Individually Or As An Ordered Combination

If the court determines that the claims at issue are directed to a patent-ineligible concept, and here, they are, then the court proceeds to ask "[w]hat else is there in the claims before [it]?" *RDPA, LLC v. Geopath, Inc*., 543 F. Supp. 3d 4, 18 (S.D.N.Y. 2021).  Here, the answer to that question is "nothing."  In other words, for the Step Two analysis, the inquiry focuses on whether there is an inventive concept sufficient to save the claims from being a patent upon the abstract idea itself.  As described below, there is no inventive concept in the '376 Patent.

The '376 Patent, and claim 37 specifically, do not contain any "inventive concept" (*i.e.*, an element of combination of elements "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself"), regardless of whether the claims are evaluated as a whole or as an ordered combination. *Alice*, 573 U.S. at 217–18.  And because the '376 Patent, and claim 37, lack an "inventive concept," it fails *Alice* Step Two.

Claim 37 does not contain any element, or combination of elements, that adds "significantly more" to the claim to satisfy the second step of the *Alice* inquiry.  Importantly, the abstract idea itself—*i.e.*, the offer of an incentive as compensation for performance of a client-requested service—cannot supply the inventive concept. *See BSG Tech LLC*, 899 F.3d at 1290. "It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *Id.*  Thus, the remainder of the claim must contain the inventive concept

17

for it to be patent eligible.  But as explained further below, there is no inventive concept embodied in the remainder of the claim.

For starters, QTI's conclusory allegations in its complaint—for example, that the claimed invention is directed to "systems and methods of distributing data intensive content" and that the claimed invention can be used to "facilitate the distribution of a single set of data intensive content over a network"—can and should be disregarded.  As the Federal Circuit recently found, conclusory allegations are insufficient to create an inventive concept. *Bluebonnet Internet Media Services*, 2024 WL 1338940, at *2 (Fed. Cir. Mar. 29, 2024) (explaining that the district court need not "accept as true allegations in the complaint that are conclusory, state legal conclusions, or contradict the patent itself" and that "the sheer number of conventional computer components employed, without more, does not constitute an inventive concept").

But even if the court were to entertain QTI's conclusory allegations, they do not describe an inventive concept sufficient to save claim 37, nor do they highlight anywhere in claim 37 where the claim language itself supplies the inventive concept.  When the abstract idea itself (*i.e.*, the limitation requiring that "incentive[s] as compensation" be offered) is removed from the claim, all that remains is the sending and receiving data between two devices as shown below:

> 37. A computer readable storage medium or media encoded with one or more computer programs including instructions for effecting the provision of content over a network, comprising:
>> [a] instructions for ***receiving a request from a client*** for specified content;
>> [b] instructions for ***communicating to the client the identity of a node server having the specified content stored thereon***, thereby enabling the client to request transmission of the specified content from the node server; and
>> [c] instructions for ascertaining ***that the node server transmitted the specified content to the client***, ~~wherein an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client~~.

'376 Patent, 27:62–28:9 (emphasis added, abstract idea struck).

Federal courts have routinely found such features (as shown in [a]–[c], above) to be routine computer functions and, importantly, insufficient to confer an inventive concept to the claims under *Alice* Step Two. *See, e.g.*, *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1329 (Fed. Cir. 2017) (finding "the sending and receiving information to execute the database search, e.g., receiving a request for information and delivering records" to be "routine computer functions"); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (holding that "a computer receives and sends the information over a network—with no further specification—is not even arguably inventive").

As the Federal Circuit has repeatedly explained, "invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016); *see also RDPA*, 543 F. Supp. 3d at 22 (citing *Elec. Power Grp.* for the proposition that, "merely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information based-category of abstract ideas"). The same is true here; there is nothing in claim 37 that is "even arguably inventive" or "sufficient to pass the test of an inventive concept" because all the claim requires is the sending and receiving of information on a generic well known computer network. *Elec. Power Grp.*, 830 F.3d at 1355.

QTI attempts to head off a § 101 challenge by describing in its complaint (incorrectly) that the claimed invention is "a very powerful system for distribution of content (and, in particular, high-bandwidth content) over a network." Ex. A, ¶ 21. But QTI's allegations fail for two critical reasons.

*First*, each and every component in the claims is conventional, well known, and ubiquitous. In the '376 Patent's own words, the computer and network components of the claims, including the methods of using them, were "well known" to those of skill in the art. *See* '376 Patent, 8:36–43; *see also id.* at 3:45–49, 7:28–32, 7:46–51, 8:1–5, 18:1–3, 18:66–19:5.  Indeed, the '376 Patent itself expressly states that "when the invention is implemented on the Internet, conventional software and hardware, as is well known, can be used to transmit" the content. *Id.* at 8:36–38; *see also id.* at 3:29–34 (describing "conventional usage" of terms "network site" and "node"); *id.* at 4:67–5:4 (describing facilitation of content over "conventional television networks, cable television networks, digital television networks, satellite television networks"); *id.* at 11:47–52 (describing implementation of the claimed invention on the Internet using a "conventional Web browser"); *id.* at 11:61–66 (same); *id.* at 14:1–4 (use of a "conventional Web browser" to accomplish claimed functions).

The '376 Patent is replete with descriptions of these generic components and, therefore, "fall[s] squarely within [Federal Circuit] precedent finding generic computer components insufficient to add an inventive concept to an otherwise abstract idea." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 614 (Fed. Cir. 2016); *see also Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016) (claims that "add only generic computer components such as an 'interface,' 'network,' and 'database' … do not satisfy the inventive concept requirement").  The Federal Circuit has been clear—"there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible." *Mortg. Grader*, 811 F.3d at 1325 (collecting cases).

*Second*, the claimed generic computer and network components behave exactly as one would expect them to according to their common, everyday usage.  This does not, and indeed,

cannot, supply an inventive concept as a matter of law.  There can be no inventive concept in a claim where a patent simply applies an abstract idea in a routine and conventional way using computer and network components that "behave exactly as expected according to their ordinary use." *In re TLI Commc'ns LLC Pat. Litig.,* 823 F.3d 607, 614–15 (Fed. Cir. 2016).  The '376 Patent specification "confirms that the … [claimed computer readable storage medium, content, and network] behave as expected." *Id.* at 614.  Nothing in the claim language "purports to improve the functioning of the computer itself or effect an improvement in any other technology or technical field." *Mortg. Grader*, 811 F.3d at 1325.

QTI's additional allegations in its complaint about unclaimed technical improvements are legally irrelevant in the § 101 analysis. Ex. A, ¶ 21.  Nowhere in claim 37 does the claim, by its express terms, require connecting (or generating) a "powerful system" capable of handling "data intensive" or "high bandwidth content." *See* '376 Patent, claim 37.  Such unclaimed features are, in fact, unclaimed, and irrelevant here.  Thus, this Court can, and should, disregard QTI's allegations about unclaimed improvements in its *Alice* analysis because "[i]n considering patent eligibility under § 101, one must focus on the claims," "a claim may 'preempt' only that which the claims encompass, not what is disclosed but left unclaimed." *See, e.g.*, *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012); *see also AuthWallet, LLC v. Block, Inc.,* 602 F. Supp. 3d 620, 635 (S.D.N.Y. 2022), *aff'd*, No. 2022-1842, 2023 WL 3330298 (Fed. Cir. May 10, 2023) ("The focus of a Section 101 inquiry is on the asserted claims.").

In short, and in the '376 Patent's own words, the claimed components are nothing more than "conventional software and hardware, as is well known." *Id.* at 8:36–38.  Accordingly, there is no inventive concept under *Alice* Step Two.

**C.** **Plaintiff's Contention That The '376 Patent Would Not Preempt The Field Misses The Mark And Does Not Avoid Patent Eligibility**

QTI's complaint alleges that the '376 Patent claims, including asserted claim 37, "do not merely recite a generic way of distributing content," but instead "are directed to a specific way of distributing content using other sites on a network as node servers." Ex. A, ¶¶ 24–25.  QTI further alleges that preemption is not a concern in the field because "[a]lternative ways exist and are known for distributing content on a network." *Id.*  QTI's allegations are meritless for two reasons.

*First,* limiting the use of the abstract idea for providing incentives as compensation to one way of distributing content using sites on a network does not narrow the scope of preemption. As courts have explained, this is "because of the proliferation of online [activity] in today's day and age," particularly the distribution of content in the age of streaming services, including on television, radio, mobile phones and the Internet. *AuthWallet*, 602 F. Supp. 3d at 635.  Content distribution across devices is ubiquitous and the claims, including asserted claim 37, by their terms do not limit the claimed invention to any particular field, type of content, method of distribution, or types of incentives to be offered as compensation.

*Second*, this District has held that the "absence of complete preemption does not demonstrate patent eligibility." *Id.*  The Federal Circuit has likewise "consistently held" that "claims that are otherwise directed to patent-ineligible subject matter cannot be saved by arguing the absence of complete preemption." *Return Mail, Inc. v. U.S. Postal Serv.*, 868 F.3d 1350, 1370 (Fed. Cir. 2017), *rev'd and remanded on other grounds*, 587 U.S. 618 (2019).  Thus, QTI's allegation that "alternative" ways exist for distributing content does not make the claims any less abstract or save them from a patent ineligibility finding. *Id.* ("Arguments about the lack of preemption risk cannot save claims that are deemed to only be directed to patent-ineligible subject matter.").

Indeed, the claims, as written, would preempt the field.  This is evidenced by, at least, QTI filing recent lawsuits against various radio, music, and television companies engaged in the actual business of distributing content to subscribers, including Pandora, Sirius XM, Warner Brothers, and AMC Networks.  Thus, QTI's allegations that the claims do not preempt the field are meritless.

**D.  <u>Claim 37 Is Representative Of All Claims In The '376 Patent</u>**

All 123 claims in the '376 Patent embody the same patent-ineligible abstract idea of offering incentives as compensation in return for providing a service. *See* '376 Patent, claims 1, 35–37, 55–57, 90.  As a result, and as discussed below, claim 37 is representative of the other claims in the '376 Patent.

All the claims from the '376 Patent recite the same abstract idea—specifically, that the owner of the node server is "offered an incentive as compensation." *See* '376 Patent, claims 1, 35–37, 55–57, 90.  The primary difference between the independent claims is the manner in which they were drafted, but this does not change the patent-eligibility analysis. *See, e.g.*, *Realtime Tracker, Inc. v. RELX, Inc.,* 659 F. Supp. 3d 384, 408 (S.D.N.Y. 2023) (explaining that "the Court's above analysis has used [a claim] as representative and has drawn on the Patent's language as a whole," and that "[t]his analysis extends to each of the method and computer readable medium independent claims at issue, and their dependent claims" because the independent claims call for the same method as the analyzed claim).

Importantly, none of the dependent claims "differ in any manner that is material to the patent-eligibility inquiry." *Realtime*, 659 F. Supp. 3d at 395.  "The respective dependent claims merely add specificity about potential attributes of the methods. And the language of the computer readable medium claims is functionally identical to that of the method claims." *Id.* at 408.

Thus, the Court may treat claim 37 as representative of all claims of the '376 Patent. *See Content Extraction & Transmission LLC v. Wells Fargo Bank*, Nat'l Ass'n, 776 F.3d 1343, 1348–

49 (Fed. Cir. 2014); *Pers. Beasties Grp. LLC v. Nike, Inc.*, 341 F. Supp. 3d 382, 386 (S.D.N.Y. 2018), *aff'd*, 792 F. App'x 949 (Fed. Cir. 2020).  And, as discussed above, because claim 37 is directed to a patent-ineligible abstract idea, the remainder of the claims are as well.

## V.   <u>CONCLUSION</u>

For at least all the reasons set forth above, Defendant Pandora respectfully requests that the Court grant its motion to dismiss QTI's complaint with prejudice because the '376 Patent, and asserted claim 37, are directed to a patent-ineligible abstract idea without an inventive concept, and as such are invalid under 35 U.S.C. § 101.

Dated: July 1, 2024                      Respectfully submitted,

By:   _s/ Mark A. Baghdassarian_

Mark A. Baghdassarian
Shannon Hedvat
Jeffrey Coleman
mbaghdassarian@kramerlevin.com
shedvat@kramerlevin.com
jcoleman@kramerlevin.com
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Tel: (212) 715-9100
Fax: (212) 715-8000

***Counsel for Defendant Pandora Media, LLC***

**<u>CERTIFICATE OF SERVICE</u>**

I certify on July 1, 2024, the foregoing document was filed electronically with the Court, with notice of filing generated and sent electronically via the Court's CM/ECF system to all counsel of record.

By:   <u>*s/ Mark A. Baghdassarian*          </u>
      Mark A. Baghdassarian

26